SANDERSON Executor of SANDERSON *against*
LAMBERTON.

IN ERROR.

THIS was an action against *Sanderson* the testator, on
the custom as a common carrier, for not delivering to
*Lamberton* a barrel of castor hats, which in consideration of
two dollars, he had agreed to carry from *Philadelphia* to
*Carlisle*. The suit was instituted in the Common Pleas of
*Cumberland*, and during its pendency *Sanderson* died, and
his executor was made a party by *scire facias*. In this
Court it was argued upon the following special verdict,
on which the Court below gave judgment for the plaintiff.

1813.

*Chambersburg,*
*Monday,*
September 27.

*A* agreed with
*B* a common car-
rier, for the car-
riage of certain
goods. *B* without
the direction of
*A*, agreed with
*C* another carrier
for the carriage
of the same goods;
and *C* without
the knowledge or
direction of *A*,
agreed with *D* a
third carrier. *D*
lost them. *Held*
that *A* might
maintain suit
against *D*, and
that by bringing
his action he
affirmed the con-
tract made with
him by *C*, and
could not after
that recover from
*B* or *C*.

"The jurors empannelled and sworn to try the issue
"joined in this cause, respectively do find, that the plain-
"tiff *James Lamberton*, on the twenty-eighth day of *April*
"*Anno Domini* one thousand seven hundred and ninety-six,
"being in the city of *Philadelphia*, bargained and contracted
"with a certain *John Semple*, then and there being a com-
"mon carrier, to carry for hire, a barrel containing twelve
"castor hats, the property of the said *James Lamberton*,
"which said barrel with its contents, the said *John Semple*
"agreed to deliver in a reasonable time, to the said *James*
"*Lamberton*, at his store in *Carlisle*, which said barrel of
"hats, were at the time of the above contract, deposited
"with *Benjamin Scull* of the said city. The jurors afore-
"said do further find, that the said *John Semple* after-
"wards, without the direction of the said *James Lamberton*,
"did engage and contract with a certain *John Chambers*,
"then and there being also a common carrier for hire, that
"he the said *John Chambers*, would deliver the said barrel of
"hats to the said *James Lamberton*, at his store in *Carlisle*,
"in a reasonable time. And the jurors aforesaid respec-
"tively do further find, that in pursuance of the agreement
"so made, between the said *John Semple* and the said
"*John Chambers*, he the said *John Chambers* received the
"said barrel of hats from the said *Benjamin Scull*, and that
"the said *John Chambers* then and there, without the know-

VOL. VI. R

1813.

SANDERSON
*v.*
LAMBERTON.

" ledge or direction of the said *James Lamberton*, did agree " with *Robert Sanderson*, the defendant's testator, (the " said *Robert* then and there being a common carrier for " hire) that the said *Robert* should carry the said barrel of " hats, and in a reasonable time deliver the same to the " said *James Lamberton*, at his store in *Carlisle*. And the " said *John Chambers*, did then and there undertake that " the said *James Lamberton* would pay him the said *Ro-* " *bert*, for the carriage of the said hats, the sum of two " dollars, upon the delivery of the said barrel of hats at " the store of the said *James Lamberton*, in the borough of " *Carlisle*. In pursuance of which said agreement, the said " *Robert* then and there received from the said *John* " *Chambers*, the said barrel of hats. And the jurors afore- " said do further find, that the said barrel of hats was not " delivered to the said *James Lamberton*, at his store " in *Carlisle*, in a reasonable time by the said *Robert*, but " that the same was entirely lost by the negligence of the " same *Robert Sanderson*. But whether the plaintiff is en- " titled to recover &c., the jurors are ignorant, and pray " the opinion of the Court. And if the Court shall be of " opinion in favour of the plaintiff, then the jury find for the " plaintiff the sum of one hundred and twenty-eight dollars " and twenty-nine cents damages, and six cents costs. But " if the Court shall be of opinion in favour of the defen- " dant, then the jurors find for the defendant."

*Metzger* argued for the plaintiff in error, that here there was an express contract made between *Chambers* and *Sanderson*, which negatived any implied contract between the latter and *Lamberton;* and that as *Sanderson* could not have recovered his compensation from *Lamberton*, neither could the latter recover the value of his goods from *Sanderson*. The action against the carrier must be in the name of the consignor who agreed with him, and was to pay him; and in this case *Chambers* was the consignor, acting for himself, and not for *Lamberton*, because *Lamberton* gave no authority to *Semple* to make a contract for him, nor did *Semple* give any to *Chambers*. The contract by *Lamberton* was specially made with a carrier of his own choice. He neither named *Sanderson* as the carrier, nor was *Sanderson* em-

ployed under a general order given by *Lamberton* to employ any carrier. He therefore cannot maintain the action. *Duncan* v. *Keiffer* (a), *Davis* v. *James* (b), 2 *Com. on Con.* 315.

*Parker* and *Carothers* contra. *Sanderson's* estate is clearly liable, and the only question is, by whom the action should be brought. The present action avoids circuity, and that is of itself a strong argument for it. But in addition to that, the contract with *Sanderson* was clearly made for the benefit of *Lamberton*, and he has therefore a right to affirm it, and sue upon it. He has affirmed it by the suit. Still further, he was the owner of the goods, and an action against a common carrier may be supported in the owner's name, although he has not named the particular carrier. As to the compensation of *Sanderson*, he had a right to retain for it. *Schemerhorn* v. *Vanderheyden* (c), 1 *Selw. N. P.* 339., *Snee* v. *Prescot* (d), *Godfrey* v. *Furzo* (e), *Evans* v. *Marlett* (f), *Skinner* v. *Upshaw* (g).

TILGHMAN C. J. Upon the special verdict in this case, it appears that *Lamberton* the plaintiff below, having a barrel containing twelve castor hats in *Philadelphia*, which he wished to be conveyed to *Carlisle*, the place of his residence, agreed with *John Semple* a common carrier for the carriage of them. *Semple* without the knowledge of *Lamberton*, contracted with another carrier of the name of *John Chambers* for the carriage. *Chambers*, having received the barrel from the house of *Benjamin Scull* in *Philadelphia*, where it was deposited, delivered it to *Robert Sanderson*, who was also a common carrier, and engaged that on its safe delivery in *Carlisle*, the plaintiff should pay to the said *Sanderson* the sum of two dollars. This also was without the knowledge of the plaintiff. The barrel was lost by the negligence of *Sanderson;* and the only question is, whether this action can be supported by the plaintiff. That the estate of *Sanderson* must be answerable for the value of the hats, there is no doubt, because he undertook to carry them and he lost them. If *Lamberton* had purchased the goods in *Philadel-*

| | | |
|---|---|---|
| (a) 3 *Binn.* 126. | (d) 1 *Atk.* 248. | (f) 1 *Ld. Ray.* 271. |
| (b) 5 *Burr.* 2680. | (e) 3 *P. Wms.* 186. | (g) 2 *Ld. Ray.* 752. |
| (c) 1 *Johns.* 139. | | |

1813.

SANDERSON
v.
LAMBERTON.

*phia,* and given general orders to the person from whom he purchased, to send them to *Carlisle,* and that person had contracted with *Sanderson* for the carriage, it is certain that an action for the loss might have been brought by *Lamberton,* because the property was his, and the contract was made for his benefit. But a distinction is set up in the present case. It is said that the plaintiff gave no such general order, but made a particular contract with a carrier of his own choosing. True, he did; but it does not follow that he might not relinquish that contract. Surely he might, and it appears to me that he has relinquished it by bringing this action. *Chambers* may be now considered as the agent of the plaintiff, contracting with *Sanderson;* because the plaintiff has affirmed the contract. Supposing that the plaintiff might have looked to *Semple* in the first instance, yet he cannot do so *now,* because he has elected to adopt the contract made with *Sanderson.* I see no difficulty in the case, and am clearly of opinion, that the judgment should be affirmed.

YEATES J. gave no opinion, having been prevented from sitting at the argument.

BRACKENRIDGE J. An action of trover and conversion could no doubt be supported by *Lamberton* against *Sanderson,* for the *general* or absolute property was in *Lamberton,* and a *special* only or qualified property in *Sanderson;* and the not delivering to *Lamberton,* for whose use he had received the property, but retaining, must be construed a turning to his own use. It is the same thing in legal contemplation, as if he had found the property of *Lamberton* on the highway, and refused to deliver. The only difficulty is that of a technical subtlety, the declaring in assumpsit. An *express* promise is alleged as made by *Semple* in the first instance, and this is in the way of an implied promise by *Sanderson* to deliver; *expressum cessare facit tacitum.* This is not a place for the application of the maxim. It is an original undertaking by *Sanderson,* at the instance of *Semple,* to deliver to *Lamberton. Semple* may be considered as acting as the agent of *Lamberton* in making this agreement, and contracting with *Sanderson.* Suppose

*Semple* living, who is said to be dead, and *Lamberton* releasing to him his right of action on this contract, his testimony would fix the undertaking upon *Sanderson*, and make him answerable. The jury have found all that *Semple* could have proved, and the undertaking becomes express with *Semple* on behalf of *Lamberton*, that he *Sanderson* would carry these goods. This may be said to be something like an *astutia* in the case, but in order to avoid circuity of action it is allowable. *Quære*, whether by a fiction, for the sake of equity and to avoid circuity, it might not be carried further, as I think it was in a case where I was concerned at the bar, where *A* sold a horse to *B*, who transferred to *C*, who also transferred to *D*; and it turning out that *A* had fraudulently concealed defects in his sale to *B*, *D* brings his action against *A*. But this I throw out for the consideration of what may be done to reach justice against him who was the first occasion of the wrong, and put into circulation as it were a horse that was unsound. An action might perhaps accrue to the last holder.

Judgment affirmed.